## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

WATERSTONE MORTGAGE CORPORATION,

               Plaintiff,

vs.                                        **Case No.**

OFFIT KURMAN, P.A.,

               Defendant.

---

## COMPLAINT

      Plaintiff Waterstone Mortgage Corporation, by its counsel, as and for its Complaint against Defendant Offit Kurman, P.A., alleges and states as follows:

### SUBJECT MATTER JURISDICTION AND VENUE

      1.      This Court's subject matter jurisdiction is invoked pursuant to 28 U.S.C. § 1332 in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

      2.      Venue in proper in this Court under 28 U.S.C. § 1391(b)(1) in that all defendants are residents of this judicial district (as residency is determined under 28 U.S.C. § 1391(c)(2)), and under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim(s) herein occurred in this judicial district.

### THE PARTIES

      3.      Plaintiff Waterstone Mortgage Corporation (hereinafter "Waterstone") is a corporation that is, and at all times material to this Complaint was, incorporated in the State of Wisconsin.  Waterstone's principal place of business is, and at all times material to this

1

Complaint was, located in Waukesha County, State of Wisconsin. For purposes of 28 U.S.C. § 1332, Waterstone is a citizen of the State of Wisconsin.

4.     Defendant Offit Kurman, P.A. (hereinafter "Offit Kurman") is a corporation that is incorporated under the laws of the State of Maryland, with its principal place of business in the State of Maryland. For purposes of 28 U.S.C. § 1332, Offit Kurman is a citizen of the State of Maryland. Offit Kurman is a law firm that, through its shareholders, officers, directors, and/or employees, engages in the practice of law.

**FACTUAL ALLEGATIONS**

5.     Waterstone is an independent mortgage bank whose loan officers develop business by actively engaging with their communities and developing and maintaining referral relationships. Loan officers whose principal work location is outside of Waterstone's physical offices are known within Waterstone as "outside loan officers." Loan officers whose principal work location is within Waterstone's physical offices are known within Waterstone as "inside loan officers."

## I.     Offit Kurman's Re-Drafting of Waterstone's Employment Agreements

6.     Waterstone retained Offit Kurman to provide legal advice regarding the legally proper method of compensating its outside loan officers. At the time of Offit Kurman's retention, Offit Kurman and its lawyers presented themselves to Waterstone as having special experience, knowledge, and skill in the area of employment law. Waterstone also retained Offit Kurman to prepare, or at the very least assist in preparing, new employment agreements for Waterstone to utilize with its outside loan officers, so that the new employment agreements would be consistent with Offit Kurman's legal advice as to the legally proper method of compensating the outside loan officers.

7.     Before retaining Offit Kurman for these purposes, Waterstone's employment agreements with its outside loan officers provided for compensation based on the outside loan officers being exempt from the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA").  When consulting Offit Kurman about new employment agreements, it was Waterstone's wish and intent to continue treating its outside loan officers as "exempt" under the FLSA, if legally proper.  Waterstone advised Offit Kurman of its wish and intent in this regard while Offit Kurman was advising Waterstone on these issues.

8.     Offit Kurman recommended that Waterstone change its employment agreements so as to treat the outside loan officers as non-exempt from the FLSA's minimum wage and overtime requirements.  This recommendation was based, at least in part, on an opinion letter from the U.S. Department of Labor that questioned whether employees resembling Waterstone's outside loan officers qualify for the FLSA's "administrative exemption."  Specifically, it was Attorney Ari Karen ("Karen") and/or Attorney Russell Berger ("Berger") at the Offit Kurman law firm that provided this legal advice.

9.     Offit Kurman did not advise Waterstone that, notwithstanding the Department of Labor opinion, Waterstone's outside loan officers would still qualify for what is known as the "outside sales exemption" to the FLSA's minimum wage and overtime requirements.

10.     Consistent with its advice, in or about 2010, Offit Kurman drafted new employment agreements for Waterstone's outside loan officers to execute.

11.     The new employment agreements, drafted by Offit Kurman, stated, among other things, that Waterstone would pay the employee minimum wage for all hours worked in a given week up to 40 hours, and would pay the employee overtime for all hours worked in a given week in excess of 40 hours.

3

12.     The new employment agreements, drafted by Offit Kurman, also included an arbitration provision, which requires that any dispute concerning, among other things, the employee's wages or hours be resolved through binding arbitration.  The arbitration provision also contained what is commonly known as a "class or collective action waiver," meaning the employee is not permitted to join the claims of any other person in the arbitration, through some class or collective procedure.

## II.     The *Herrington* Action

13.     On November 28, 2011, Patricia Herrington, a former Waterstone outside loan officer, filed a lawsuit against Waterstone in the United States District Court for the Western District of Wisconsin, entitled *Herrington v. Waterstone Mortgage Corporation*, Case No. 3:11-cv-00779 (hereinafter "*Herrington* action").  The *Herrington* action was filed as a class action by Herrington individually and on behalf of all others similarly situated.

14.     Offit Kurman agreed to represent Waterstone in the *Herrington* action.  At the time Offit Kurman began representing Waterstone in connection with the *Herrington* action, Offit Kurman and its lawyers presented themselves to Waterstone as having special experience, knowledge, and skill in the area of employment litigation.  Karen is, on information and belief, admitted to practice in Maryland, the District of Columbia, and Georgia.  Berger is, on information and belief, admitted to practice in Maryland.  Karen and Berger were both admitted *pro hac vice* to the United District Court for the Western District of Wisconsin for purposes of representing Waterstone in the *Herrington* action.

15.     Offit Kurman and its officers, members, and employees never discussed with Waterstone that they may have had a conflict of interest in representing Waterstone in the *Herrington* action.  Waterstone was therefore unable to make an informed decision whether to

4

have Offit Kurman, rather than other attorneys, defend Waterstone in that action. Indeed, Offit Kurman had an actual conflict of interest in representing Waterstone in the *Herrington* action. Having provided legal advice and recommendations as to how to compensate Waterstone's outside loan officers, Offit Kurman had an incentive to defend the quality of its legal advice and recommendations, and to defend the quality of the employment agreements it drafted for Waterstone, rather than examine what was in Waterstone's best interests, or to send Waterstone to independent counsel for more objective advice.

A.    **The Motion to Dismiss or Compel Arbitration in *Herrington***

16.    In December 2011, on Waterstone's behalf and acting as Waterstone's attorneys, Offit Kurman prepared and filed a motion in the *Herrington* action requesting that the Court dismiss the action, or alternatively, to compel arbitration, based on the arbitration provision in the employment agreement that Herrington (and other outside loan officers) signed ("Arbitration Motion"). This is the same arbitration agreement that Offit Kurman drafted for Waterstone. Waterstone also argued in this Arbitration Motion that the arbitration could not proceed as a class or collective action because of the language prohibiting such action in the arbitration clause in the employment agreement.

17.    In January 2012, before the district court decided the Arbitration Motion, the National Labor Relations Board ("NLRB") issued a decision concluding that an employer, D.R. Horton, Inc., had violated the National Labor Relations Act ("NLRA") by requiring its employees to sign an arbitration agreement that, among other things, prohibited an employee from pursuing claims in a collective or class action.

18. In opposing the Arbitration Motion, Herrington raised this D.R. Horton decision and argued that the action must be permitted to proceed as a class or collective action, even if the Court compelled arbitration.

19. At no time during the briefing or argument of the Arbitration Motion did Offit Kurman cite the United States Supreme Court decision in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758 (2010). That case held that a party may not be compelled under the Federal Arbitration Act ("FAA") to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.

20. Instead, in a supplemental brief relating to the Arbitration Motion, Offit Kurman stated that, if the district court found the class and collection action waiver in the employment agreement, the Court should still compel arbitration and should allow the matter to proceed as a collective action in arbitration. Specifically, Offit Kurman wrote: "Furthermore, … even if the this [sic] Court agrees with Plaintiff that the collective action prohibition of the Employment Agreement was invalid, this Court still ought to compel arbitration. If the collective action prohibition is determined to be invalid, it can easily be severed from the otherwise valid and enforceable arbitration provision, allowing for a collective action in arbitration."

21. At no time before filing the supplemental briefing with the above concession did Offit Kurman ever discuss with Waterstone the potential advantages and potential disadvantages of proceeding with a collective action in arbitration. Offit Kurman never obtained Waterstone's authority to agree to a collective action in arbitration. Offit Kurman thus gave Waterstone no opportunity to make an informed decision whether to allow the case to proceed as a collective action in arbitration. Had Offit Kurman done so, Waterstone would never have agreed to allow Offit Kurman to make an argument to acquiesce to a collective arbitration.

22.     On March 16, 2012, the district court in the *Herrington* action ruled that Herrington's claims must proceed via arbitration, pursuant to the arbitration clause in the employment agreement. However, consistent with Offit Kurman's unathorized argument, the Court severed the language in the employment agreement prohibiting collective or class proceedings, finding that language inappropriate in light of the NLRB's decision in the D.R. Horton matter. The collective arbitration proceeded for the next five years.

**B.     Offit Kurman's Argument about the Outside Sales Exemption**

23.     During the collective arbitration, Offit Kurman filed a motion for summary judgment. In this motion, Offit Kurman argued that Herrington's claims and the claims of the other petitioners fail because, as a matter of law, Herrington and the other petitioners, as Waterstone's outside loan officers, are and were exempt from the FLSA's minimum wage and overtime requirements based on the outside sales exemption. The arbitrator agreed that the outside sales officers were exempt as a matter of law, but denied the motion by finding there was a question of fact whether Waterstone waived the outside sales exemption by drafting the employment agreements in a manner that compensated the outside loan officers in conformity with the FLSA's minimum wage and overtime requirements.

**C.     Offit Kurman's Re-Drafting of the Arbitration Clause**

24.     During the collective arbitration, Offit Kurman was not pleased about developments before the arbitrator, retired federal Judge George A. Pratt. (Many of the negative developments were mostly if not entirely because of conduct by Offit Kurman that displeased Judge Pratt and that caused Judge Pratt to sanction Waterstone.) In an effort to keep more former outside loan officers from joining the collective arbitration before Judge Pratt at AAA,

Offit Kurman recommended to Waterstone that the arbitration clause in Waterstone's employment agreement with its currently employed outside loan officers be revised.

25.     Offit Kurman recommended that the revised or amended agreement have the Waterstone employees agree to elect one of two options, known as "Option A" and "Option B." Based on Offit Kurman's recommendation and legal advice, Waterstone agreed to allow Offit Kurman to draft and implement the amendment to the arbitration clause in the employment agreements for the outside loan officers.  Offit Kurman wrongfully failed to advise Waterstone to obtain the advice of independent counsel before amending the agreement, thus depriving Waterstone – once again – of the ability to make a meaningful and fully informed decision as to whether or not to amend the agreement.

26.     The amendment drafted by Offit Kurman allowed the employee to elect which of the two Options would be effective in that individual employee's agreement.

27.     By electing Option A, the employee would agree to arbitrate the dispute in the *Herrington* action before JAMS, rather than AAA.  (This was one way Offit Kurman tried to circumvent Judge Pratt's jurisdiction as arbitrator.)  Option A also permitted joinder of other employees or former employees pursuant to Federal Rules of Civil Procedure 20 and 24.

28.     Option A, as drafted by Offit Kurman, also created possible complications for Waterstone in arguing that arbitration should be required if the employee chose Option A because Offit Kurman included the following statement in Option A: "Nothing herein shall preclude or limit Employee from filing any complaint or charge with a State, Federal, or ***Court*** agency."  (Empasis added)

29.     Offit Kurman claimed later that the word "Court" was a typo, and was supposed to state "County" agency.  Offit Kurman attempted to blame Waterstone for this typo, claiming

that Offit Kurman had indeed written "County," and that it was changed to "Court" only after the drafted amendment was forwarded to Waterstone. However, tracing of the electronic versions of the document establishes that Offit Kurman – not Waterstone – did in fact draft the amendment to include the word "Court."

30. Option B did not include an arbitration provision. It permitted any employee or former employee who elected Option B to file a lawsuit in court.

31. As seen in greater detail below, Offit Kurman's re-drafting of the arbitration clause during the collective arbitration associated with the *Herrington* action caused further harm to Waterstone.

### D. Outcome of the Collective Arbitration and the Appeal

32. In the Partial Final Award on Liability issued in April 2017, the Arbitrator found in Herrington's favor and the other petitioners' favor on the claim for violation of the FLSA. The arbitrator found in Waterstone's favor on the claim for breach of contract and wage claims under Wisconsin law. In the Final Award issued in July 2017, the arbitrator found in Herrington's favor and the other petitioners' favor on the claim for violation of the FLSA. The Arbitrator found in Waterstone's favor on the claim for breach of contract. The Arbitrator awarded the petitioners approximately $10.5 million.

33. After the Final Arbitration Award was issued, Waterstone terminated Offit Kurman as its attorneys. The *Herrington* action proceeded with another law firm representing Waterstone.

34. Judgment was entered in the *Herrington* action in conformity with the $10.5 million collective arbitration award. Waterstone appealed that judgment to the Seventh Circuit Court of Appeals.

9

35.     While the appeal was pending, the United States Supreme Court issued its decision in *Epic Systems Corp. v. Lewis*, 138 S.Ct. 1612 (2018).  In that case, the Supreme Court held that class or collective arbitration waivers do not violate the NLRA.

36.     The Seventh Circuit later issued its decision in the appeal in the *Herrington* action.  Based on *Epic Systems*, the Seventh Circuit held that the district court erred in ruling that the class or collective arbitration waiver in the Waterstone-Herrington employment agreement violated the NLRA.  The Seventh Circuit remanded the case to the district court to determine if the wording of this particular arbitration provision permitted class or collective arbitration.  The district court determined that the arbitration provision does not permit class or collective arbitration.  As a result, the court vacated the $10.5 million collective arbitration award, and ordered that Herrington's claims proceed to an individual arbitration.  The court also ruled that, if other outside loan officers who participated in the collective arbitration wanted to pursue arbitration, they would need to pursue their own individual arbitrations.

## III.    The *Werner* Action

37.     The second action was filed in the United States District Court for the Western District of Wisconsin, and was entitled *Werner v. Waterstone Mortgage Corporation*, Case No. 3:17-cv-00608-jdp (the "*Werner* action").  Offit Kurman did not represent Waterstone in the *Werner* action.

38.     Waterstone incurred attorney's fees and costs while defending the *Werner* action.

39.     Waterstone eventually settled the *Werner* action and paid the settlement payment to the plaintiffs.

**IV.** **The Additional Arbitrations and the *Johnson* Action**

40.     After the district court's Order in the *Herrington* action vacating the collective arbitration award, Pamela Herrington continued pursuing her indidivudal arbitration.  That arbitration remains pending as of this filing.  Waterstone has incurred attorney's fees and costs in defending Herrington's individual arbitration, and will continue incurring attorney's fees and costs in defending that arbitration.  Depending on the outcome of Herington's individual arbitration, Waterstone may also incur additional damages as a result of Offit Kurman's conduct.

41.     Additionally, at least 85 other former Waterstone outside loan officers have filed arbitration proceedings against Waterstone, making the same essential claims as the plaintiffs in the *Herrington* action and the *Werner* action.  Waterstone has incurred attorney's fees and costs in defending these arbitrations, and will continue incurring attorney's fees and costs in defending the arbitrations.  Depending on the outcome of these individual arbitrations, Waterstone may also incur additional damages as a result of Offit Kurman's conduct.

42.     Some of the claimants in these arbitrations were those who executed employment agreements with arbitration clauses containing Option A and Option B – discussed in paragraphs 24-31 above.  Because of the way Offit Kurman drafted Option A, Waterstone faces the prospect – even despite the *Epic Systems* decision – of a class or collective arbitration, due to the substandard representation by Offit Kurman.

43.     Additionally, because of the way Offit Kurman drafted Option A and/or Option B, a third lawsuit has been filed in court against Waterstone by former outside loan officers.  This case was filed in this Court (the United States District Court for the Eastern District of Wisconsin), and is entitled *Johnson, et al. v. Waterstone Mortgage Corporation*, Case No. 2:19-cv-00652-NJ (hereinafter *Johnson* action).  The complaint is styled as an "individual,

collective action and class action complaint." Like the complaints in the *Herrington* action and the *Werner* action, the complaint in the *Johnson* action alleges two causes of action for: 1) violation of the FLSA; and 2) "common law contract and/or quasi-contract." Waterstone has incurred attorney's fees and costs in defending the *Johnson* action, and will continue incurring attorney's fees and costs in defending the *Johnson* action. Waterstone also faces potential liability to the plaintiffs and potential class in the *Johnson* action.

## V. Defendants' Advice and Lack of Advice on Potential Settlement

44. From the outset of the *Herrington* action, Offit Kurman repeatedly told Waterstone that the claim under the FLSA lacked merit because of the outside sales exemption.

45. Although the employment agreement contained terms that were consistent with the FLSA's minimum wage and overtime requirements, Offit Kurman assured Waterstone that the outside sales exemption barred the claims of Herrington and those in the collective arbitration (many of whom now have individual arbitrations pending against Waterstone). Offit Kurman consistently explained to Waterstone that the outside sales exemption was "unwaivable." Offit Kurman therefore represented to Waterstone that the employment agreements Offit Kurman drafted would not preclude application of the outside sales exemption, did not advise Waterstone about the potential for an argument of waiver, and did not include any language in the employment agreements regarding Waterstone's right to argue that loan officers were subject to the FLSA's outside sales exemption.

46. From the outset of the *Herrington* action, based on Offit Kurman's evaluation of the outside sales exemption, Offit Kurman consistently advised Waterstone that the FLSA claim lacked merit, and that the plaintiffs' only potential recovery in the case would be on the state-law

contract claims. Offit Kurman consistently advised Waterstone that its maximum exposure was in the range of $300,000.

47.    Offit Kurman represented to Waterstone that its attorneys were highly experienced with litigation. As supposedly experienced trial lawyers, Offit Kurman and its attorneys knew or should have known that no position taken in litigation is guaranteed to prevail. Offit Kurman should have recognized the potential that a court or arbitrator would conclude that the outside sales exemption can be waived. Offit Kurman should have better and more carefully explained the risks of the *Herrington* action and Waterstone's potential ranges of exposure to Herrington and those who participated in the collective arbitration.

48.    Moreover, part of an attorney's duty of care to a client who is a defendant is to help the client evaluate whether a settlement might be more beneficial to the client in light of the potential or likely expense in continuing to defend the case.

49.    Before Judge Pratt issued the Final Award in the collective arbitration, Waterstone was presented with multiple opportunities to settle the *Herrington* action, including the claims by those who participated in the collective arbitration. One settlement demand from the plaintiffs was for $1.8 million, plus any attorney's fees to be awarded by the Court or Arbitrator, capped at $890,000. That means Waterstone could have settled the case for potentially as little as $1.8 million, but for an amount that did not exceed $2,690,000.

50.    Offit Kurman not only did not recommend to Waterstone that it accept this settlement demand, but Offit Kurman provided no analysis to Waterstone to help evaluate whether agreeing to this settlement demand would be more cost-effective than continuing to defend the case, for which Offit Kurman was collecting significant amounts of fees.

51. If Waterstone had accepted that settlement demand, Waterstone would not have had to incur the following expenses: 1) the costs of proceeding with the collective arbitration; 2) attorney's fees and costs for the appeal of the judgment in the *Herrington* action; 3) the attorney's fees for the briefing work in the district court following the appeal; 4) the attorney's fees and costs associated with defending the Herrington individual arbitration; 5) the attorney's fees and costs associated with defending the individual arbitrations initiated by those who participated in the collective arbitration in the *Herrington* action and who thus would have been part of the settlement; and 6) the attorney's fees and costs associated with defending the *Johnson* action in federal court initiated by those who participated in the collective arbitration in the *Herrington* action and who thus would have been part of the settlement.

52. Thus, even if Waterstone defeats the claims in Herrington's arbitration and the claims of every one of the current claimants who were involved in the collective arbitration in the *Herrington* action – which is not certain – the cost of continuing to defend all these matters has been or will be far greater than the amount of the settlement demanded in the *Herrington* action.

53. Offit Kurman failed to provide Waterstone with any type of evaluation that could be called a cost-risk-benefit analysis if Waterstone did not accept the settlement demand.

## FIRST CAUSE OF ACTION

## PROFESSIONAL NEGLIGENCE

54. Waterstone incorporates paragraphs 1 through 53, inclusive, as though fully set forth herein.

55. Offit Kurman entered into an attorney-client relationship with Waterstone. Offit Kurman therefore owed a duty to Waterstone to exercise reasonable care and to use such skill,

prudence, and diligence that an attorney commonly possesses and exercises. Specifically, because Offit Kurman and its lawyers presented themselves to Waterstone as having special experience, knowledge, and/or skill in the particular areas of employment law and employment litigation, Offit Kurman is held to the standard of care of reasonably prudent lawyers with that special experience, knowledge, and/or skill.

56. Offit Kurman breached its duty of care, and its conduct fell below the applicable standard of care, in multiple regards, including but not limited to the following, all of which were the direct and proximate cause of harm and damage to Waterstone.

57. Offit Kurman negligently advised Waterstone to change its existing employment agreements for outside loan officers, and negligently drafted the new employment agreements in a way that included compensation provisions in accordance with the FLSA's minimum wage and overtime requirements when in fact the outside loan officers were and should have continued to be exempt from those requirements under the outside sales exemption (and possibly other exemptions as well), such that the Arbitrator found a waiver of the outside sales exemption in the *Herrington* action.

58. Further, having changed Waterstone's employment agreements for outside loan officers, Offit Kurman negligently failed to provide adequate or any legal advice to Waterstone as to how to best instruct and/or train Waterstone personnel to ensure that outside loan officers would comply with new guidelines to comply with the new compensation structure, which was essentially created by Offit Kurman.

59. The negligence in the preceding two paragraphs was a direct and proximate cause of harm to Waterstone in that, absent and but for such negligence, the *Herrington* action, *Werner* action, and *Johnson* action would never have been filed, and the currently pending arbitration

proceedings would never have been commenced. Offit Kurman's negligent conduct was, at the very least, a substantial factor in those matters being instituted. Waterstone has incurred millions of dollars in attorney's fees and costs (much of it paid to its negligent counsel, Offit Kurman) as a result of those matters and thus as a direct and proximate result of Offit Kurman's negligence. Waterstone also paid a settlement in the *Werner* action as a direct and proximate result of Offit Kurman's negligence. Waterstone also continues to incur attorney's fees and costs, and faces potential liability, in the arbitrations and the *Johnson* action.

60. Offit Kurman acted negligently in that, during the Arbitration Motion in the *Herrington* action, Offit Kurman failed to cite and rely on the *Stolt-Nielsen* decision, which is astonishing in light of its claimed expertise in the area of employment law – a claim on which Waterstone relied in retaining Offit Kurman in the first place. Offit Kurman also negligently agreed in the Supplemental Brief (without first consulting their client) to a collective arbitration in the event the district court invalidated the class and collective action waiver. No competent lawyer in the area of employment law would ever have advised Waterstone to agree to collective arbitration in any event, for any reason. It is simply not of any benefit to an employer to do so.

61. This conduct was the direct and proximate cause to Waterstone. Had Offit Kurman properly asserted *Stolt-Nielsen*, and not agreed to collective arbitration, the district court and/or Arbitrator Pratt would have concluded there was insufficient evidence of intent by Waterstone to any class or collective arbitration. Even though the collective arbitration award was ultimately vacated, this was only after ***five years*** of collective arbitration, during which Waterstone incurred millions of dollars in attorney's fees and costs that Waterstone would not have incurred if it were not for Offit Kurman's negligence on this issue.

62.     Offit Kurman negligently amended the arbitration provision in the employment agreements for outside loan officers by failing, in Option A, to include provisions that would adequately preclude class or collective arbitration (especially without first properly consulting Waterstone about the issue), by including the word "Court" in Option A such that an employee could elect Option A and still pursue court litigation, and by permitting litigation in court, in Option B, without fully and adequately assessing whether that would be the proper and best forum for Waterstone's interests, and without first consulting and advising Waterstone properly about the effects of such revisions/amendments.

63.     Offit Kurman's negligent amendment of the arbitration provision has been and will continue to be the direct and proximate cause of harm to Waterstone.  These amendments may permit claimants in new arbitrations to argue that class or collective arbitrations are allowed, which has caused and will cause Waterstone to incur attorney's fees to address.  This could also result in substantial attorney's fees and costs should class or collective arbitration(s) proceed that would not have been incurred through individual arbitrations.  This has also been the direct and proximate cause of harm to Waterstone in that it has resulted in the filing of the *Johnson* action, with the attorney's fees and costs (and possible additional damages) that would not have been incurred without Offit Kurman's negligence in this regard.

64.     Offit Kurman was negligent in failing to identify and address the conflict of interest they had in representing Waterstone in the *Herrington* action while also being in the position of having an interest in defending their work product in the drafting of the employment agreements at issue in that action.

65.     This was the direct and proximate cause of harm because it caused Offit Kurman to use poor judgment in deciding how to address the *Herrington* action – for example, in

recommending against amending the employment agreements to account for the outside sales exemption and in constantly telling Waterstone it faced no liability on the FLSA claim – which then caused Waterstone to incur substantial attorney's fees and costs (and the settlement payment in the *Werner* action) that it would not otherwise have incurred.

66.     Offit Kurman was negligent in assessing Waterstone's potential exposure in the *Herrington* action, and thus in not evaluating and providing recommendations to Waterstone about potential settlement that would have been far more advantageous to Waterstone than continuing in arbitration on a path that was shown to be ill-advised..

67.     This was a direct and proximate cause of harm to Waterstone.  But for the negligence, Waterstone would have accepted a settlement demand, which would have ended the *Herrington* action and related arbitration, preventing Herrington and other claimants from being able to pursue their arbitrations now and preventing those claimants from pursuing the *Johnson* action.  This has resulted in far greater attorney's fees and costs (and exposure to potential liability) than the amount of the settlement demand.

## SECOND CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

68.     Waterstone incorporates paragraphs 1 through 67, inclusive, as though fully set forth herein.

69.     Offit Kurman was in an attorney-client relationship with Waterstone, and therefore owed Waterstone a fiduciary duty.  This duty is one of the highest degree of character, honesty, and loyalty.

70.     Offit Kurman breached its fiduciary duty to Waterstone in that, among other things:

a. Offit Kurman failed to identify and/or address the conflict of interest it had in representing Waterstone in the *Herrington* action in light of its interest in defending its own work product in drafting the employment agreements that were the subject of that action. Alternatively, Offit Kurman knew of this conflict, but refused to advise Waterstone of that conflict so it could attempt to hide its own negligence in drafting these agreements through defending the *Herrington* action in a way that would, Offit Kurman hoped, prevent Waterstone from discovering that negligence. This was a violation of Offit Kurman's duty of loyalty to Waterstone. Offit Kurman should have, at a minimum, obtained a properly written conflict-of-interest waiver and advised Waterstone to seek the advice of independent counsel on the issue of representation in the litigation. Independent counsel competent in this area of the law could and would have immediately advised Waterstone that Offit Kurman had negligently drafted the employment agreements and could have taken measures to prevent further loss, exposure, and attorneys' fees by contesting the plaintiffs' claims in the employment litigation. This would have meant the end of Offit Kurman's very lucrative engagement with Waterstone, and Offit Kurman put its own financial interests in continuing on as Waterstone's attorney ahead of the best interests of its client.

b. Offit Kurman put its own interests ahead of its clients in that it tried to blame Waterstone for the error in including the word "Court" in "Option A" of the amendment to the employment agreement, instead of "County." Offit Kurman did this rather than what it should have done, that is: accepting and acknowledging its own error, and encouraging Waterstone to get an independent legal opinion. Independent counsel would not have been ego-driven or driven by fear of malpractice liability in properly advising Waterstone in the context of the arbitration.

c. Offit Kurman failed to adequately discuss settlement options and strategies with Waterstone, and insisted that Waterstone faced no liability on the FLSA claim, again for the purpose of hiding its own negligence in many regards, or because Offit Kurman was negligent, and failed to recognize the danger to its client in continuing to pursue the course Waterstone was currently on due to Offit Kurman's advice.

71. As a direct and proximate result of Offit Kurman's conduct, Waterstone was damaged in that, among other things, Waterstone unnecessarily incurred attorney's fees and costs; Waterstone incurred and has paid attorney's fees for which it was provided little or no value; and Waterstone was deprived of the opportunity of defending itself adequately in the *Herrington* action. These damages are in an amount according to proof at trial, but in any event well in excess of the $75,000 minimum jurisdictional limits of this court.

72. As a direct and proximate result of Offit Kurman's conduct, Waterstone is entitled to restitution, including but not necessarily limited to disgorgement of all ill-gotten gains, including attorney's fees to which Offit Kurman, as a result of its conduct, is not entitled and/or did not truly earn.

73. Offit Kurman, as outlined in detail, acted maliciously toward Waterstone and in an intentional disregard of Waterstone's rights, and otherwise engaged in conduct that was fraudulent, oppressive, and despicable. Accordingly, Offit Kurman is liable for exemplary and/or punitive damages.

WHEREFORE, Plaintiff Waterstone Mortgage Corporation prays for judgment as follows:

1. For compensatory damages in an amount to be proved at trial but in any event in excess of $75,000;

2.      Restitution, including but not limited to disgorgement of ill-gotten gains;

3.      Punitive damages in an amount sufficient to punish Offit Kurman for its

wrongful, despicable, unethical, malicious and oppressive conduct towards Plaintiff;

4.      Costs of suit herein, including reasonable attorney's fees (if Plaintiff is entitled to

such fees); and

5.      Such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff Waterstone Mortgage Corporation hereby demands trial by jury.


Dated: August 2, 2019                GASS WEBER MULLINS LLC

By:   ___*s/ Daniel J. Kennedy*_____
        David J. Turek, Esq., WI SBN 1035356
        turek@gwmlaw.com
        Daniel J. Kennedy, Esq., WI SBN 1068680
        kennedy@gwmlaw.com
        241 N. Broadway, Suite 300
        Milwaukee, WI 53202
        Telephone: (414) 224-3445

        Attorneys for Plaintiff Waterstone Mortgage
        Corporation