# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WATERSTONE MORTGAGE CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>OFFIT KURMAN P.A.,<br><br>        Defendant. | Case No. 19-CV-1117-JPS<br><br>**ORDER** |

**1. INTRODUCTION**

Plaintiff alleges that Defendant, its former law firm, gave bad advice which led to Plaintiff trudging through years of litigation and incurring millions of dollars in attorneys' fees. (Docket #1). Defendant has moved to dismiss Plaintiff's complaint in its entirety. (Docket #11). For the reasons explained below, the motion will be denied.

**2. STANDARD OF REVIEW**

Defendant has moved to dismiss Plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). That Rule provides for dismissal of complaints which fail to state a viable claim for relief. Fed. R. Civ. P. 12(b)(6). In reviewing Plaintiff's complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in [its] favor[.]" *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016) (citation omitted). To state a viable claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which

it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level[.]" *Kubiak*, 810 F.3d at 480 (quotation omitted).

3. **RELEVANT FACTS**

Accepting the truth of Plaintiff's well-pleaded allegations and drawing all reasonable inferences in its favor, the relevant facts are as follows. Plaintiff is a mortgage bank based in Waukesha. Its business relies on loan officers who work both within the company's physical offices ("inside" loan officers) and outside the offices ("outside" loan officers). Plaintiff retained Defendant, a law firm headquartered on the East Coast, to advise Plaintiff on the appropriate method for compensating its outside loan officers. Plaintiff hired Defendant and relied on it throughout the events of this case based on Defendant's representations as to their experience and skill in employment law.

Specifically, Plaintiff asked Defendant whether the outside loan officers should be considered exempt from the minimum wage and overtime requirements of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Plaintiff had been treating the officers as exempt. Defendant advised that the officers were non-exempt. In 2010, Defendant drafted new employment agreements for Plaintiff's outside loan officers consistent with that advice. The agreements also included an arbitration and class waiver provision, forcing the officers to arbitrate any wage or hour claims and to do so on an individual basis.

In November 2011, a former outside loan officer named Pamela Herrington ("Herrington") sued Plaintiff in the Western District of Wisconsin in a class action for violation of the FLSA. *Herrington v.*

*Waterstone Mort. Corp.*, No. 3:11-CV-779-BBC (W.D. Wis.). Plaintiff hired Defendant to defend against *Herrington*. Plaintiff alleges that Defendant had a conflict of interest in taking the case, which was not disclosed to Plaintiff, because Defendant had an incentive to defend the quality of its legal advice regarding the employment agreements.

In December 2011, Plaintiff moved to dismiss Herrington's complaint and compel individual arbitration. Plaintiff contends that Defendant failed to cite appropriate authority in support of the motion. For her part, Herrington cited to an NLRB decision interpreting the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, which provided that arbitration agreements could not include class waivers. As part of the briefing, Defendant also conceded on Plaintiff's behalf that collective arbitration would be acceptable, without actually discussing that prospect with Plaintiff beforehand. In March 2012, the court followed Defendant's concession, dismissing the case and ordering collective arbitration.

The collective arbitration proceeded for the next five years. In the context of summary judgment briefing, Defendant argued that the outside loan officers should, contrary to its prior advice, be considered exempt from the FLSA under the outside sales exception. The arbitrator agreed with that legal precept, but ruled that Plaintiff may have waived the argument by drafting the employment agreements as it did.

During this time, Defendant was generally displeased with how the arbitration was going. In an effort to limit the size of the collective, Defendant suggested amending the outside loan officer employment agreements. The amendment gave the officers two options: 1) agree to arbitrate the *Herrington* dispute before JAMS, not AAA, which was the agency currently handling the arbitration, and agree to allow joinder of

other employees to that JAMS arbitration, or 2) do not agree to arbitrate and so permit the officer to file a lawsuit. The first option, as drafted by Defendant and sent to the officers, included a typo that seemed to permit even those who chose that option to file a lawsuit as well.

The arbitration finally ended in mid-2017, with the arbitrator awarding Herrington and the collective class over $10 million dollars in overtime compensation. Plaintiff fired Defendant and hired new attorneys. After the award was reduced to judgment, Plaintiff appealed to the Seventh Circuit. During the pendency of that appeal, the Supreme Court issued its opinion in *Epic Systems Corporation v. Lewis*, 138 S.Ct. 1612 (2018), holding that class waivers in arbitration agreements are valid and do not violate the NLRA. Relying on that opinion, the Seventh Circuit remanded the *Herrington* appeal to the district court to determine if the arbitration provision permitted collective arbitration. The district court found that it did not, and so vacated the arbitration award and ordered the outside loan officers to proceed to individual arbitration.

Since that decision, Plaintiff has been faced with numerous individual arbitrations and lawsuits from its former outside loan officers. Plaintiff complains of the substantial attorneys' fees it has paid to Defendant for its prior representation, and the fees it has and will continue to pay to its later-hired attorneys who are addressing Defendant's mistakes. Plaintiff states that it does not know its final exposure for fees or damages awards, as many of the arbitrations and lawsuits are ongoing.

Plaintiff concludes by questioning Defendant's advice regarding settlement throughout the pendency of *Herrington*. Defendant was adamant that the outside sales exemption could not be waived, and that in total, Plaintiff faced a loss of no more than $300,000. At one point, Herrington

made a settlement demand which totaled about $2.7 million. Defendant recommended that Plaintiff reject the demand. Plaintiff states that Defendant failed to provide an appropriate and realistic evaluation of the prospect of settlement, a settlement which would have avoided all of the litigation Plaintiff now faces.

Though not part of the complaint, some further procedural history is in order. On October 20, 2017, soon after Plaintiff terminated Defendant's representation, Plaintiff filed a substantially similar malpractice action against Defendant in the District Court for the Western District of Wisconsin. *Waterstone Mortgage Corp. v. Offit Kurman, LLC et al.*, Case No. 3:17-CV-796-JDP (W.D. Wis.). That action was litigated vigorously for over a year-and-a-half. On May 1, 2019, the parties asked the court to continue the trial date and various discovery deadlines in light of their desire to pursue mediation. *Id.*, (Docket #70). The court rejected their request in large measure. On June 24, 2019, the parties jointly stipulated to the dismissal of the case without prejudice. *Id.*, (Docket #75).

4.  **ANALYSIS**

Plaintiff presents two causes of action. The first is for professional negligence. Plaintiff claims that Defendant's representation fell below the standard of care for lawyers having specialized employment law experience. Defendant's negligence, in turn, led to the improper collective arbitration and the subsequent individual arbitrations and lawsuits. Plaintiff's second claim is for breach of fiduciary duty. Plaintiff states that Defendant violated its fiduciary duty to Plaintiff by failing to disclose conflicts of interest and by defending its own prior advice to hide its negligence at Plaintiff's expense.

Defendant offers four arguments for dismissal of the case. First, Defendant asserts that Plaintiff fails to state viable claims for relief. Second, Defendant contends that some or all of the relevant conduct occurred beyond the applicable statutes of limitations. Third, Defendant argues that the claims are unripe. Finally, Defendant suggests that the fiduciary duty claim is unnecessarily duplicative of the professional negligence claim. The Court will begin by addressing the timeliness and justiciability issues, then move to the merits of the pleaded claims.[1]

### 4.1 Statute of Limitations

Defendant claims that the bulk of its relevant conduct, occurring from 2010 to 2012, is too old to support Plaintiff's claims. Timeliness issues can be tricky to raise in a motion to dismiss, as factual disputes can preclude a court from deciding the issue as a matter of a law. *Donaldson v. West Bend Mut. Ins. Co.*, 773 N.W.2d 470, 473 (Wis. Ct. App. 2009). However, whether a particular statute of limitations applies to a claim is a question of law. *Munger v. Seehafer*, 890 N.W.2d 22, 31 (Wis. Ct. App. 2016). Thus, where the facts underlying the timeliness analysis are undisputed, a court can rule on a statute of limitations defense raised in a motion to dismiss. *State ex rel. Johnson v. Litscher*, 625 N.W.2d 887, 889 (Wis. Ct. App. 2001). The relevant facts are drawn from the complaint and those asserted in the response brief. *Id.*

---

[1] As will become obvious throughout the remainder of this Order, the parties have put forth far too little effort and attention to detail in presenting their positions to the Court. The Court is, frankly, astonished that this could occur in a case which is centered on allegations of *legal* malpractice. The Court admonishes counsel for both parties to give this litigation an appropriate level of attention moving forward. If counsel fail to do so, they will bring undesired consequences upon themselves and their clients.

The parties have missed the mark so badly with their statute of limitations arguments that the Court has been forced to make its own way through the relevant statutes and case authority. Defendant's folly begins with its assertion that both of the claims in this case are subject to a three-year limitations period. This is incorrect; while the breach of fiduciary duty claim is governed by a three-year statute of limitations, Wis. Stat. § 893.57, the professional negligence claim has a six-year limitations period, *Id.* § 893.53. Defendant apparently looked to the *current* version of Section 893.53, which imposes a three-year period, rather than the version which was in effect at the time of the relevant conduct. Plaintiff points out the error in its response, and Defendant sheepishly concedes the mistake (by implication, at least) in its reply.

Plaintiff, not wanting to be outdone by Defendant's blundering, has made some interesting omissions of its own. Plaintiff's response highlights the six-year limitations period applicable to the professional negligence claim, while saying nothing about the breach of fiduciary duty claim or its limitations period. Did Plaintiff intend to concede that the fiduciary duty claim should be dismissed as time-barred? The Court is left stumped. In the same vein, Defendant contends that because the Western District lawsuit was voluntarily dismissed, it did not operate to toll the limitations period from its filing in October 2017 to its dismissal in June 2019. This assertion is critically important to the statute of limitations argument, and it is flat wrong, but Plaintiff makes no effort to counter it.

The Court has, of its own accord, discovered the error in Defendant's position. Defendant states that "in general," when an action is dismissed voluntarily, it is treated as if it had never been filed, and thus the statute of limitations is not tolled. (Docket #12 at 17). What Defendant actually meant

by "in general" is "in federal court." *See Robinson v. Willow Glen Academy*, 895 F.2d 1168, 1169 (7th Cir. 1990) ("[W]hen, as here, a case is voluntarily dismissed pursuant to Rule 41(a)(2), the Federal Rules of Civil Procedure control and the action is treated as if it had never been filed."). Wisconsin courts have directly rejected this rule in interpreting Wisconsin procedural law. *City of Waukesha v. Murphy*, 808 N.W.2d 174, 2011 WL 5924399, at *3 (Wis. Ct. App. Nov. 29, 2011); *Johnson v. Cty. of Crawford*, 536 N.W.2d 167, 169–70 (Wis. Ct. App. 1995) (citing *Robinson* and explaining that Wisconsin's rule is contrary).

Both the Western District case and this case are diversity actions, where Wisconsin state law supplies the rules of decision. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). In Wisconsin, statutes of limitation are considered substantive, rather than procedural, rules of decision. *Wenke v. Gehl Co.*, 682 N.W.2d 405, 423–26 (Wis. 2004). Thus, both this Court and Judge Peterson of the Western District are bound to apply Wisconsin's statutes of limitation in diversity cases. *Orgone Capital III, LLC v. Daubenspeck*, 912 F.3d 1039, 1044 (7th Cir. 2019); *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001). Applying Wisconsin's statute of limitations and its related tolling rules, the Court must conclude that the Western District case tolled the statutes of limitations for Plaintiff's claims. Wis. Stat. § 893.13(2); *Malone v. Corr. Corp. of Am.*, 553 F.3d 540, 542 (7th Cir. 2009).

The Court is disturbed that Defendant may have silently anticipated this result. Its opening brief contains a footnoted discussion of the issue, without any citations to law, which ends by stating that "as this lawsuit was filed in federal court, Defendant does not address the merits of any arguments of tolling based upon Wisconsin state law." (Docket #12 at 17

n.5). But Defendant is aware that this is a diversity case, and Defendant has a duty to disclose controlling case authority to the tribunal. Its position borders on an attempt to actively mislead the Court.

In the end, neither party's position takes account of the tolling issue, and thus their arguments are largely unhelpful to determining whether Plaintiff's claims are time-barred. The Court will, therefore, deny Defendant's request for dismissal on that ground at this time. The parties are free to litigate this issue again on summary judgment. Hopefully they will they take more care in doing so at that juncture.

The Court offers one final observation that may inform a renewed statute of limitations argument. The focus of Plaintiff's response to the argument is the discovery rule. The discovery rule provides that a cause of action accrues, and thus the applicable statute of limitations begins to run, "when there exists a claim capable of enforcement, a suitable party against whom it may be enforced, and a party with a present right to enforce it." *Pritzlaff v. Archdiocese of Milwaukee*, 533 N.W.2d 780, 785 (Wis. 1995). In plainer terms, the rule is that "tort claims shall accrue on the date the injury is discovered or with reasonable diligence should be discovered, whichever occurs first." *Hansen v. A.H. Robins, Inc.*, 335 N.W.2d 578, 583 (Wis. 1983).

Reasonable diligence means the diligence that most people would have applied in similar circumstances. *Sands v. Menard*, 887 N.W.2d 94, 112 (Wis. 2016). A plaintiff cannot employ an "ostrich defense," closing their eyes to reasonably accessible information and refusing to investigate his suspicions of a potential injury. *Id.* Plaintiff argues that it could not have discovered its claims until some recent, yet unspecified, point because Defendant had pulled the wool over its eyes. Defendant counters that with the initiation of the *Herrington* action, it was abundantly clear that Plaintiff

should seek a second opinion about the drafting of the employment agreements.

The Wisconsin Court of Appeals' decision in *Sands* addresses the discovery rule in the context of a breach of fiduciary duty claim against a lawyer. *Id.* at 112–15. Plaintiff fails to cite or discuss *Sands*, probably because the case is not favorable to its position. The Court has nevertheless read the opinion and expects the parties to thoroughly address it in any further statute of limitations arguments.

**4.2    Ripeness**

Defendant's ripeness argument is as bare-bones as possible, and the Court will give it a commensurate level of attention. Defendant maintains that Plaintiff's allegations of future damages are too hypothetical to support a present cause of action. Specifically, Defendant believes that Plaintiff can only speculate in its demand for compensation for future attorneys' fees and costs that Plaintiff will incur for the individual arbitrations and lawsuits, because those actions are not yet resolved. Defendant fails to cite any analogous case authority for this, instead relying only on the general principle of ripeness. For a court to exercise jurisdiction over a controversy, "the facts of a case must be sufficiently developed to allow a conclusive adjudication." *Carlin Lake Assoc., Inc. v. Carlin Club Props., LLC*, 929 N.W.2d 228, 239 (Wis. 2019). Otherwise, in cases which rest on "hypothetical or future facts," courts risk issuing advisory opinions. *Id.* (quotation omitted).

The facts underlying Plaintiff's claims are well-established. Plaintiff alleges specific past conduct by Defendant, constituting legal malpractice and breach of fiduciary duty, which has caused and will continue to cause damages. Defendant's position conflates its disagreement on the quantum of damages with whether Plaintiff can presently allege damages (and the

other elements of its claims). Whether Plaintiff can *prove* its damages at trial is an entirely different matter. In other words, Defendant's argument is one for the jury in its final summation. If Plaintiff provides less-than-concrete support for its damages related to the pendency and ultimate results of the pending arbitrations and litigation, the Court trusts that Defendant will be ready to pounce.

### 4.3 Failure to State Viable Claims for Relief

Defendant attacks the merit of Plaintiff's claims from numerous angles. Most of Defendant's arguments are irrelevant, as they address issues and claims not raised in the complaint. The rest are thinly veiled factual disputes not suitable for disposition on a motion to dismiss. None warrant dismissal of the complaint.[2]

#### 4.3.1 Professional Negligence

Defendant first contends that its conduct did not breach the standard of care. Defendant bases this argument solely on the fact that, in light of *Epic Systems*, the Seventh Circuit's *Herrington* opinion found that the class and collective action waiver provisions of the employment agreements were valid and enforceable. This is both true and immaterial. Plaintiff does not claim that Defendant was negligent in drafting the waiver provision. Rather, Plaintiff maintains that Defendant's advice and drafting for the outside loan officers' compensation was erroneous, specifically by advising that the officers were non-exempt when they were in-fact exempt.

---

[2]Much of this discussion may be rendered moot by the appropriate application of the statutes of limitations to Plaintiff's claims. However, with the parties' above-described failings in this regard, the Court must consider all of Defendant's merits-based arguments.

Defendant next argues that its conduct was not the cause of any of Plaintiff's losses. The first loss Defendant identifies is the arbitration award itself. But Plaintiff does not claim the now-vacated award as an item of damages, so the argument is irrelevant. The second loss Defendant addresses is Plaintiff's payment of attorneys' fees. Defendant asserts that Plaintiff's outlay of attorneys' fees was caused by the district court's erroneous *Herrington* decision which struck down the class and collective action waiver. Again, Plaintiff's concern in this case is not with the waiver provision. Plaintiff takes issue with Defendant's poor advice regarding the FLSA and outside loan officer compensation. None of the courts in the *Herrington* action ever opined about that topic.

The foregoing are Defendant's *properly developed* arguments with respect to the professional negligence claim. Defendant's reply raises new issues either ignored, or cursorily referenced, in the opening brief. First, Defendant claims that it cannot be held liable for Plaintiff's employees' decision to file FLSA lawsuits; Defendant asserts that no lawyer guarantees that his client will never be sued in relation to some work that the lawyer performed. Second, Defendant recasts its ripeness argument by claiming that Plaintiff cannot show causation between its alleged negligence and Plaintiff's potential future injuries. Third, Defendant states that, with the ultimate reversal of the district court's *Herrington* decision, some of Defendant's negligent conduct which occurred during the course of that litigation should no longer serve as a valid basis for a negligence claim. Finally, Defendant maintains that Plaintiff would have incurred fees to defend itself in the *Herrington* litigation regardless of whether it was Defendant or some other firm that was engaged for the defense.

Each of these arguments, first raised and meaningfully developed in Defendant's reply, has been waived. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 528 (7th Cir. 2005). Moreover, the arguments are of questionable merit. Defendant is not being sued merely because Plaintiff's outside loan officers tried to dispute their compensation in court or in arbitration. Defendant is being sued because it provided poor legal advice which resulted in lawsuits. The parties dispute, and the Court cannot resolve here, whether Defendant's advice met the applicable standard of care. Defendant's concern with causation is unavailing for the same reasons discussed above with respect to ripeness. As to the conduct within the *Herrington* litigation, perhaps Defendant should not be liable for certain discrete failings, but that is again a factual matter not suitable for disposition at this stage. Finally, Defendant's fee argument is a red herring. Plaintiff has properly alleged a professional negligence claim that resulted in, *inter alia*, a monumental waste of attorneys' fees. The fact that the majority of these fees were paid to Defendant, rather than some other law firm, is indeed immaterial; in either case, Plaintiff's right to recover the fees from Defendant as damages would not change.

### 4.3.2 Breach of Fiduciary Duty

Defendant first argues that Plaintiff's breach of fiduciary duty claim should be dismissed as duplicative of the professional negligence claim. Defendant cites no Wisconsin law in support of this view. The Court must, therefore, reject it. The fiduciary duty claim certainly overlaps the professional negligence claim in time and subject matter, but specific and distinct conduct is alleged to have breached the duty. Those breaches include representing Plaintiff in the *Herrington* litigation, having drafted the employment agreements underlying that litigation, improperly assigning

blame for the amendment typo, and failing to adequately discuss settlement options in *Herrington*. These issues are related to, but different than, those raised in the professional negligence claim. Second, Defendant contends that Plaintiff has simply repackaged its professional negligence claim into one for a breach of fiduciary duty, and so the fiduciary duty claim fails to state a claim for the same reasons. But the professional negligence allegations *do* state a claim for relief, so this assertion is a non-starter.

5.  **CONCLUSION**

In light of the foregoing, Defendant's motion to dismiss must be denied in its entirety.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (Docket #11) be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 5th day of March, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge